IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01622-KMT

NASER ABDO,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
A. BALSICK,
J. CRAIG,
J. MUNOZ,
STARIKA,
LT. FERNANDEZ,
LT. MELVIN, and
NURSE LEVI WILLIAMS,

    Defendants.

---

**UNITED STATES' RESPONSE TO MOTION FOR INJUNCTION (ECF No. 166)**

---

    Abdo is not entitled to an injunction directing ADX officials how to handle his mail and imposing requirements for mail procedures that do not apply to any other BOP inmate. His accusations that prison officials are "tampering with or destroying" his mail are utterly speculative and wholly unfounded. His voluminous filings in this case—over 80 docket entries in a proceeding where a motion to dismiss is not yet fully briefed—shows that he faces no impediment to his access to the Court.

    Every week, prison officials process thousands of pieces of incoming and outgoing mail for inmates and BOP staff at the Florence Correctional Complex. As the declarations attached to

this response confirm, staff involved in the mail process are too busy to target Abdo and, in fact, they have *not* targeted him; the staff member who has primary responsibility for processing his mail does not even know who he is. Yet, these officials, along with BOP legal personnel, have been obliged to dedicate many hours to responding to Abdo's numerous unsupported accusations. As Abdo proclaimed in the public record of his sentencing hearing, his "Jihad" against the United States "will continue until the day the dead are called to account for their deeds." *See United States v. Abdo*, No. W-11-CR-182(01), ECF No. 143-4 at 3-4, Sentencing Transcript excerpt. The Court should deny his motion.[1]

## BACKGROUND

Abdo claims that prison officials tampered with his mail in four ways: (1) prison staff allegedly altered the zip code on his mail to his "former military attorney"; (2) his copy of Defendants' motion to dismiss, ECF No. 143, was "illegally opened"; (3) a packet containing outgoing legal materials was never posted on the Court's docket; and (4) he has not received copies of all docket entries posted on the Court's Electronic Case Filing system—the vast majority of which are *his own filings*. ECF No. 166 at 3-4.

An injunction is an "extraordinary and drastic remedy" which requires that "the right to relief must be clear and unequivocal." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). A party seeking a preliminary injunction bears the high burden to establish a clear showing of four elements: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in

---

[1] This response is made only on behalf of the United States because Abdo cannot obtain injunctive relief against the individual-capacity defendants. *See*, *e.g.*, *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1167 (D. Colo. 2010).

the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

In this case, however, Abdo's burden is even higher because he seeks preliminary injunctive relief "specifically disfavored" by the Tenth Circuit. *Schrier v. University of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005). Recognizing that the "limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Schrier*, 427 F.3d at 1258, the Tenth Circuit has identified three types of disfavored injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Id.* at 1259 (quotation omitted). In such circumstances, the "movant must 'satisfy an even heavier burden of showing that the four [preliminary injunction[] factors . . . weigh heavily and compellingly in movant's favor before such an injunction may be issued." *Id.* at 1261 (alterations in original). The Tenth Circuit has instructed that any request for such an injunction "must be more closely scrutinized" to ensure that the movant has satisfied the increased burden. *Id.*

The injunctive relief Abdo seeks falls into the first and second of these specifically disfavored categories.[2] The necessary result of Abdo's call for a finding that his mail has been

---

[2] Although the relief Abdo requests is not of the same character as that he would receive if he ultimately prevailed on the excessive-force claims in his underlying complaint, *see*, *e.g.*, *Hicks v. Jones*, 332 F. App'x 505, 508 (10th Cir. 2009), the United States liberally construes the motion as raising an access-to-the-court issue and responds to the substance of the allegations. *See Brown v. Colorado*, No. 16-cv-02018-DME-NYW, No. 16-cv-02018-DME-NYW, 2017 WL 4075139, at *3 (D. Colo. Sept. 14, 2017) (evaluating substance of request for preliminary injunction where request was related to "the court's ability to properly adjudicate the dispute before it.").

3

"tampered with" or "destroyed," ECF No. 166 at 1—when BOP officials have in fact complied with established mail-handling procedures—is an injunction that would impose special procedures for handling Abdo's mail that are outside of BOP policy. Such an injunction would be mandatory and would clearly alter the status quo between BOP officials and Abdo—not to mention other inmates whose demands for similar treatment of their mail would almost certainly follow. *See Schrier*, 427 F.3d at 1261.

Abdo demands two other mandatory, status-quo-altering orders. The first would require the United States to send him, by certified mail at the government's expense, a copy of each of *his own* voluminous court filings. ECF No. 166 at 2. That rule is not found in the Federal Rules of Civil Procedure, which do not require a party to serve another party with *that party's own papers* or require service of any paper by certified mail. *See* Fed. R. Civ. P. 5(a), Fed. R. Civ. P. 5(b). Abdo further seeks a standing order that the Court will wait indefinitely for him to respond to certain filings that, in his view, could prejudice him. *Id.* at 2.

## ARGUMENT

**I.** **Abdo has failed to establish that he has a clear and unequivocal right to the extraordinary remedy of emergency injunctive relief.**

Abdo has not made a showing that he is entitled to the mandatory, status-quo-altering injunctions he seeks.

    **A.** **Abdo is not likely to succeed on the merits because no prison official has tampered with his mail.**

To obtain an injunction, Abdo must first establish that he is likely to succeed on the merits. *Winter*, 555 U.S. at 20.[3] That means Abdo must show that the alleged mishandling of his

---

[3] While Abdo discusses this prong in terms of his underlying excessive-force claims, *see* ECF

mail caused him an actual injury in pursuing his claims in this Court. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996) (inmate must establish actual injury to prove lack of access to court: "It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm"); *see also Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("[A] prisoner must demonstrate actual injury from interference with his access to the courts—that is that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement."); *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (inmate must "show that any denial or delay of access to the court prejudiced him in pursuing litigation").

Abdo has failed to meet this burden. His argument rests on allegations that are factually inaccurate.

### 1. BOP staff did not alter zip codes on Abdo's outgoing attorney mail.

Abdo claims that, four times between December 2018 and February 2019, unnamed BOP officials altered the zip code on his outgoing mail to a person he calls his "former military attorney." ECF No. 166-1 at 31-32. Abdo's outgoing mail was not changed by BOP personnel.

The first correctional staff member who handles outgoing legal or "special" mail for

---

No. 166 at 7-9, the injunction he seeks here is about his mail, not about BOP use-of-force policy or particular uses of force. But Abdo has not shown the likelihood of success on the merits on his excessive-force claims in any event. His arguments are cursory. He contends, based merely on his own unproven speculation and not on facts in the record, that the BOP has engaged in spoliation of evidence. ECF No. 166 at 7-8. Nor does the fact that his claims survived preliminary screening under 28 U.S.C. § 1915A, *see id.* at 8-9, show that he is likely to prevail on the merits. *Garewal v. Sliz*, 611 F. App'x 926, 9318 (10th Cir. 2015) ("[T]he fact that a district court does not dismiss a complaint under 1915A does not mean that the complaint will necessarily withstand a defendant's challenge to its plausibility under Rule 12(b)(6)."). Abdo's success on the merits is far from certain. *See* ECF No. 143 (explaining pleading deficiencies).

ADX inmates is their correctional counselor—in Abdo's case, Stephen Hansen. Hansen Decl., Ex. 1 ¶¶ 1, 3. Counselor Hansen picks up Abdo's outgoing legal mail and records it on a daily log sheet—the "Outgoing ADX Legal Mail/Certified Mail" log for ADX D Unit, where Abdo is housed (hereafter, "Outgoing Legal Mail Logs"). *Id.* ¶¶ 6-7; *id.* Att. 3 (Outgoing Legal Mail Logs for ADX D Unit, November 2018 through June 25, 2019).[4] Counselor Hansen then delivers Abdo's outgoing legal mail, unopened, to mailroom staff for processing outside the institution. *Id.* ¶ 6.

Counselor Hansen did not change the zip codes on Abdo's outgoing mail to the attorney. *Id.* ¶ 11. In fact, after some pieces of Abdo's mail to the attorney were returned as undeliverable, Counselor Hansen took it upon himself to do some research to help Abdo. *Id.* ¶¶ 8-9. Counselor Hansen discovered that Abdo was using the wrong address for the attorney. *Id.* ¶¶ 8-9. Counselor Hansen gave Abdo the correct address, *id.* ¶ 9, which Abdo has since used. *Id.* ¶ 10. That mail, using the correct address, was not returned as undeliverable. *Id.*

After Counselor Hansen gathers and logs Abdo's outgoing legal mail, he delivers it to mailroom staff, *id.* ¶ 6, where Correctional Systems Officer Sandra O'Donnell bears primary responsibility for sorting and processing Abdo's mail. O'Donnell Decl., Ex. 2 ¶ 2. Officer O'Donnell is the mailroom staff member who processed the four pieces of outgoing mail to the attorney that Abdo claims were tampered with. *Id.* ¶¶ 4-5.[5] Officer O'Donnell—who processes

---

[4] Only those pages from the logs on which Abdo's name appears have been included in the attachments to the declarations of BOP officials. The names of BOP inmates who are not parties to this case have been redacted.

[5] A fifth mail item was processed on February 20, 2019, by another officer who is believed to be an officer who has since retired from the BOP. Ex. 2 at n.1 & Att. 1 at 2. As with Officers Hansen and O'Donnell, there is nothing in the record to suggest that this retired officer took the extraordinary step of altering the zip code on this single piece of Abdo's outgoing legal mail.

hundreds of pieces of non-legal and legal mail every day and who does not know Abdo—did not tamper with or alter Abdo's mail to the attorney in any way. *Id.* ¶¶ 6-8. Any changes likely were made by the U.S. Postal Service, *see id.* ¶ 9, and could have been made by Abdo himself. While some of Abdo's letters may have been delivered to the attorney, notwithstanding Abdo's using the wrong address, *see* ECF No. 166-1 at 30, the decision to deliver incorrectly addressed mail was made by the Postal Service, not the BOP. BOP officials are not privy to this decision-making and cannot know why the Postal Service delivered some of Abdo's mis-addressed letters, but not others.

The BOP informed Abdo that his own mistaken belief about the attorney's address was the probable cause of the Postal Service returning the mail. Not only did Counselor Hansen inform him of the attorney's correct address, *see* Ex. 1 ¶ 9, so did other prison officials during the administrative remedy process.[6] On March 12, 2019, the Complex Warden told Abdo in a response to an administrative remedy that Abdo "incorrectly wrote the address for your attorney, as the attorney[']s address is Northeast and not Northwest. Therefore, the USPS returned your mail as 'Return to Sender, No such number, unable to forward.'" Shelton Decl., Ex. 4 ¶ 3 & Att. 1 at p. 1. In response to another administrative remedy, a correctional official sent Abdo pages from a legal search engine website and an Oklahoma City map, with this statement:

> A quick review of your complaint revealed the zip code for the address in your declaration (504 Northwest 16th St., Oklahoma City, OK) is 73103 (not 73104). The Post Office returned your mail with a stickie stating, "attempted – not known, unable to forward." This implies either the addressee or address is unknown and they are unable to

---

[6] Undersigned counsel is authorized to represent that Abdo has not fully exhausted his administrative remedies concerning the allegations he raises in the injunction motion. He should be required to do in order to pursue these claims in Court. Regardless, in a good faith effort to explain the facts and to show the Court that the BOP is not tampering with Abdo's mail, the United States responds to the substance of Abdo's allegations here.

7

forward it. The P.O. most likely crossed out your zip code because it was incorrect. Further review revealed attorney James M. Branum is located in Oklahoma City but at 504 Northeast (not west) 16th St. Oklahoma City, OK 73104. Based on this review, it appears you misaddressed your legal mail and the P.O. returned it.

Ex. 4 ¶ 4 & Att. 2 at 5-6. The mail that Abdo subsequently sent to the attorney's correct address was *not* returned to the institution. Ex. 1 ¶ 9.

The mailroom on the Florence Correctional Complex processes approximately 5,000 pieces of mail per week, including approximately 1,500 pieces of outgoing mail. Lovellette Decl., Ex. 3 ¶ 14. Mailroom staff have neither the time nor the motivation to alter addresses on outgoing inmate mail. *Id.* ¶ 17. Since November 2018, the FCC Florence mailroom has processed approximately 100 pieces of Abdo's outgoing legal mail. Ex 2 ¶ 11 & Att. 2. Since January 2018, the mailroom has processed approximately 80 pieces of incoming legal mail for Abdo. *Id.* at Att. 3.

There is no objective basis for Abdo's contention that the BOP deviated from established procedures in processing his legal mail. *See Wilson v. Hodel*, 758 F.2d 1369, 1372 (10th Cir. 1985) (recognizing that agency's official acts are supported by presumption of regularity). His sheer speculation is insufficient to establish prison staff engaged in mail tampering.

    **2. BOP staff properly treated an incoming envelope from the U.S. Attorney's Office as general correspondence.**

Abdo claims that his copy of Defendants' motion to dismiss, ECF No. 143, should have been treated as special mail and was "illegally opened" by BOP staff. ECF No. 166 at 3. Abdo misapprehends the facts.

The large envelope containing the motion to dismiss, accompanying exhibits, and unpublished cases was sent to Abdo marked as "SPECIAL MAIL - OPEN ONLY IN THE

PRESENCE OF INMATE" as required by 28 C.F.R. § 540.18(a). Ex. 3 ¶ 11. However, the envelope was properly treated by the BOP as non-legal, or general, correspondence because it did not contain the return address of the U.S. Attorney's Office. *Id.* ¶¶ 11-12. To be treated as special mail, the correspondence must both be marked "Special Mail – Open only in the presence of the inmate," and the sender must be "adequately identified on the envelope." 28 C.F.R. § 540.18(a). "In the absence of either adequate identification"—which was missing here—"or the 'special mail' marking indicated in paragraph (1) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail." 28 C.F.R. 540.18(b); *see also*, *e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 575-77 (1974) (prison officials may require that legal mail be specially marked by the sender in order to facilitate identification of legal mail).

That is what happened with the envelope containing Defendants' motion to dismiss: "Because the envelope in question did not contain a return address or other markings identifying the sender, the mail was processed as general correspondence in accordance with 28 C.F.R. § 540.18(b)." Ex. 3 ¶ 12. The regulations authorized the BOP to take that approach. They did not act "illegally" by opening the envelope, as Abdo claims.[7]

---

[7] Undersigned counsel has been advised by staff in the U.S. Attorney's Office that, because of the size of the mailing to Abdo, the mail was sent in a larger envelope that did not contain a preprinted return address. Staff have now been instructed that no envelope should be mailed without a return address. Regardless, the U.S. Attorney's Office is under no obligation to use the special mail procedures when communicating with inmates. The regulations leave to the sender the decision whether to mark correspondence as special mail. 28 C.F.R. § 540.19(a) ("This paragraph applies only if the sender has marked the envelop as specified in § 540.18.").

Abdo makes much of the fact that he did not receive the package that contained the motion to dismiss until 10 days after it was filed on April 19, 2019, *see* ECF No. 166 at 3, but that fact does not reflect any undue delay. Because counsel did not complete the filing until 8:35 p.m. on Friday, April 19, 2019, as the Electronic Case Filing notice shows, the package was not officially postmarked until Monday, April 22, 2019—the next business day. And, as the BOP Supervisory Correctional Systems Specialist who manages the mailroom explains, the timing of the delivery of the package to Abdo reflects mandatory review and processing times for non-legal mail. Ex. 3 ¶ 13 ("This process delays the delivery of general correspondence by several days."). That fact, coupled with the enormous quantity of mail that Florence Correctional Complex Staff must process every week, shows that ten days from the date of filing is by no means an excessive amount of time for the package to have been delivered to Abdo. *Id.* ¶¶ 13-14. Abdo has a right to ask for extensions, if necessary, which this Court has generously granted to him. Indeed, he did not file his response to the motion to dismiss until June 12, 2019. ECF No. 170.

**C.     BOP staff processed Abdo's outgoing legal mail on November 27, 2018.**

Abdo claims that a group of filings for the Court, which he sent in one envelope, was never posted on the Court's docket. ECF No. 166 at 3; *see also* ECF No. 166-1 at 4-9 (documents). These papers, which Abdo dated November 27, 2018, correlate with two entries of the same date in the Outgoing Mail Log, showing that Officer O'Donnell processed legal mail for delivery to the U.S. District Court and to undersigned counsel. Ex. 2 ¶ 10.

The BOP mailed out these papers in accordance with its procedures for handling special mail. *See id.* Consistent with the BOP's records, undersigned counsel received these exact papers

on November 30, 2018, containing duplicate copies of the documents Abdo has attached to the motion for injunction. *Compare* ECF No. 166-1 at 4-9, with Ex. 5, Mailing from Abdo to Prose (showing mailing date of 11/27/18 and receipt date of 11/30/18). Abdo provides no basis for the Court to assume that the November 27, 2018, mailing to the Court was handled differently than the mailing to undersigned counsel on the same date. *See* Ex. 2 ¶ 10. Officer O'Donnell has averred that she sent out the mailings in the exact same way. Abdo has failed to show that the BOP deliberately mishandled his mail in this regard.

While the BOP cannot confirm what happens to the documents after they leave the institution, it is clear from the documents themselves that the documents were of no significant legal consequence. Abdo has no right to file surreplies, *see* ECF No. 166-1 at 5-7, and the remaining documents are declarations and a "Motion for Court Filings" that follow a pattern of other, non-substantial filings Abdo has made in this case. *Id.* at 4, 8-9. If the Court did not docket these materials, Abdo sustained no actual injury to Abdo in the prosecution of his claims.

### D. Abdo has not shown that the BOP is responsible for his not receiving certain docket entries, most of which would not have been sent to him.

Abdo claims that he has not received copies of 69 docket entries posted on the Court's Electronic Case Filing system. ECF No. 166 at 3; ECF No. 166-1 at 1. Abdo has raised such allegations throughout this case. These allegations, like the prior ones, have no merit.

The docket entries Abdo claims not to have received fall into these categories:

- 50 of the 69 referenced docket entries are filings Abdo made himself and which neither the Court nor Defendants were required to serve on him. ECF Nos. 20, 23, 24, 25, 30, 31, 32, 33, 42, 43, 44, 45, 51, 52, 53, 57, 58, 59, 60, 61, 62, 63, 64, 67, 68, 69, 70, 79, 80, 81, 86, 88, 91, 92, 93, 98, 98, 99, 100, 101, 102, 106, 107, 109, 115, 116, 129, 130, 133, 149; *see also See* Fed. R. Civ. P. 5(a), Fed. R. Civ. P. 5(b).

- 4 are "Payment Received" docket entries recording funds Abdo paid to the Court, which

the Court may not have sent to Abdo. ECF Nos. 40, 66, 85, 108.

- 3 are documents that ordinarily would be sent directly to the Court, without a copy being provided to the inmate. ECF No. 28 (Certified Mail Receipt to U.S. Attorney General); ECF No. 29 (Acknowledgment of Service from U.S. Attorney's Office); ECF No. 41 (Waiver of Service form by individual Defendants).

- 1 is a notation of Conventionally Submitted Material (videos) that would not be sent to Abdo. ECF No. 74.[8]

- 2 are filings from the U.S. Attorney's Office to Abdo: ECF No. 89 (motion for extension of time); ECF No. 96 (motion for extension of time). However, Abdo admits that he received ECF No. 96. *See* ECF No. 166-1 at 44.

- 9 are orders from the Court. ECF Nos. 37 & 38 (orders setting and then vacating a Scheduling Conference); ECF No. 78 (order granting motion to stay discovery); ECF No. 87 (minute order denying Abdo's motion for extension of time); ECF No. 90 (minute order granting motion for extension of time); ECF No. 97 (order granting motion for extension of time); ECF No. 120 (minute order granting motion for extension of time); ECF No. 135 (notice of vacated minute order); ECF No. 139 (minute order granting motion for extension of time)

There are thus only **ten** filings that Abdo should have received but allegedly did not: one from the U.S. Attorney's Office and nine from the Court. As for the documents from the U.S. Attorney's Office, undersigned counsel, consistent with office practice, certified that the filing was sent to Abdo by U.S. mail. ECF No. 89 at 4. Furthermore, the BOP official who is responsible for handling Abdo's incoming and outgoing mail has testified that she processes all inmate mail, including incoming special mail from the Court and U.S. Attorney's Offices, in accordance with established BOP procedures. Ex. 2 ¶¶ 6, 11-12. A presumption of regularity attaches to the conduct of these public officers in carrying out their official duties. *Wilson*, 758 F.2d at 1372. Abdo has presented no evidence to rebut this presumption. His sheer speculation is insufficient to show that any BOP official tampered with his incoming mail from the Court or the

---

[8] Abdo has viewed the videos.

12

U.S. Attorney's Office.

Viewed in the context of the record as a whole, consisting of 178 docket entries as of the date of this response, Abdo's assertion that he has not received ten of them fails to show that he can establish mail tampering—let alone that he has sustained any actual injury from the alleged interference with his mail. *See*, *e.g.*, Gee, 627 F.3d at 1191. As this Court emphasized in rejecting Abdo's previous allegations of mail tampering,

> Mr. Abdo offers only the fact that he did not receive mailed copies of the documents … and that, therefore, he believes that 'ADX staff withheld or destroyed' his mail .… [H]is failure to receive copies of those documents does not necessarily support his premise that ADX staff withheld or destroyed mail addressed to him; it is equally possible that administrative errors by the Court or the Postal Service are responsible for the mail not reaching Mr. Abdo. Mr. Abdo's request is *supported only by his sheer speculation* that ADX staff withheld or destroyed his mail, and thus, he has failed to come forward with sufficient evidence to justify a temporary restraining order or preliminary injunction.

ECF No. 35 (emphasis added).

The same flaw dooms Abdo's request for an injunction here. His "sheer speculation" is the sole underpinning for each allegation of mail tampering. He has failed to establish that there has been any mail tampering at all; he has not come close to showing that he would be likely to prevail on the merits of such a claim. Abdo has not satisfied the first prong of the preliminary-injunction test.

### B. Abdo is not threatened with irreparable harm.

This record shows that Abdo is not threatened with irreparable harm. He sends and receives large quantities of legal mail without interference. Ex. 2 at Atts. 2 & 3 (showing processing of approximately 80 outgoing legal mail items since November 2018 and approximately 100 items of incoming legal mail since January 2018). There are no facts supporting Abdo's allegations to the contrary. Notably, he has never been prevented from

making any Court filing that can be shown to have caused him actual harm in pursuing his claims. *See*, *e.g.*, *Lewis*, 518 U.S. at 350-51. Rather, Abdo has made dozens of filings in this case, frequently bombarding the Court with filings that are extraneous to his claims. As for his contact with his "former military attorney," the record shows that Abdo successfully sent mail to the attorney many times, *see* Ex. 1 ¶ 7 & n.2, and that his privileged mail with the attorney quickly resumed after he used the correct address that BOP officials found for him. *Id.* ¶ 9.

Abdo has come forward with no factual justification for the accusations he has brought against BOP officials who handle his mail in accordance with BOP procedures. Neither has he shown that he will be irreparably harmed if those processes remain unchanged.

### C. The public interest and balance of equities do not favor Abdo.

Because Abdo has failed to establish that he is likely to prevail on the merits or suffer irreparable harm, there is no need for the Court to evaluate the remaining preliminary-injunction factors. *Schrier*, 427 F.3d at 1269 n.2. But even if the Court evaluates the final two factors—public interest and balance of equites—they do not favor granting Abdo an injunction.

The public interest does not favor granting Abdo's motion where no violation of BOP procedures has occurred. The facts show the officials have complied with established mail-handling procedures. Abdo is entitled to no additional procedures, including rules about sending him his own filings by certified mail or requiring the Court to wait indefinitely for responses from him, without his moving for extensions of time. Such an order would be an inefficient use of the limited financial resources of the U.S. Attorney's Office, would cause confusion in the record, and, importantly, would undermine the authority of prison officials who are abiding by the rules and working diligently to process thousands of pieces of mail a week. An injunction

14

that squanders limited resources based on false information is not in the public interest. Nor is it the public interest to provide special treatment to one inmate—a convicted terrorist—over others.

For the same reasons, the balance of equities weighs against granting an injunction. As noted above, the injunction would be harmful because it would carry the presumption of proven harm or wrongdoing on the part of prison officials and interfere with the BOP's daily management of the prison. *See* 18 U.S.C. § 4042(a)(1) (according the BOP "charge of the management and regulation of all Federal penal and correctional intuitions"); *see also Turner v. Safley*, 482 U.S. 78, 90 (1987) ("When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials, and prison officials are afforded broad discretion in managing their correctional facilities"). These hardships are not outweighed by any benefit to Abdo, who has not demonstrated any harm. In short, Abdo has not established that the balance of equities weighs in his favor.

## CONCLUSION

Abdo has failed to establish that he is entitled to a preliminary injunction. The Court should deny the motion.

Respectfully submitted on July 1, 2019.

JASON R. DUNN
United States Attorney

s/ *Susan Prose*
Susan Prose, Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Tel: (303) 454-0100; Fax: (303) 454-0411
Email: susan.prose@usdoj.gov
Counsel for the United States

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)**

       I hereby certify that on July 1, 2019, I directed that the foregoing document, along with the unpublished case cited therein, be served on the following non-CM/ECF participant in the manner indicated:

Naser Abdo (U.S. mail)
Reg. No. 80882-280
ADX – Florence
P.O. Box 8500
Florence, CO 81226


                                                s/ *Susan Prose*
                                                Susan Prose
                                                United States Attorney's Office