IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01622–KMT

NASER ABDO,

     Plaintiff,

v.

UNITED STATES,
A. BALSICK ind. cap,
J. CRAIG ind. cap,
J. MUNOZ ind. cap,
STARIKA ind. cap,
FERNANDEZ Lt., ind. cap,
MELVIN Lt., ind. cap,
LEVI WILLIAMS nurse, ind. cap,
I. JOHNSTON,

     Defendants.

---

## ORDER

---

Before the court is Defendants' "Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)," and Plaintiff's "Motion for Injunction." (["Defendants' Motion"], Doc. No. 143; ["Plaintiff's Motion"], Doc. No. 166.)  Plaintiff has responded in opposition to Defendants' motion, and Defendants have replied. (["Plaintiff's Response"], Doc. No. 170; ["Defendants' Reply"], Doc. No. 182.)  The United States has, likewise, responded in opposition to Plaintiff's motion, and Plaintiff has replied. (["Defendant's Response"], Doc. No. 179; ["Plaintiff's Reply"], Doc. No. 186.)

**STATEMENT OF THE CASE**

*Pro se* Plaintiff Naser Abdo, an inmate at the United States Penitentiary, Administrative Maximum ["ADX"] facility in Florence, Colorado, brings this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ["FTCA"], 28 U.S.C. §§ 2671-2680, asserting violations of his civil rights by the United States and eight individual Defendants, all of whom are ADX employees. (["Complaint"], Doc. No. 126 at 2-4.)

## I. Food Slot Incident – Defendants Balsick, Craig, and Starika

On December 9, 2016, Plaintiff, a practicing Muslim, was said to be housed in a cell in the ADX medical unit, due to health complications from his ongoing hunger strike. (*Id.* at 5 ¶ 2.) At that time, Defendant Fernandez reportedly promised to return Plaintiff's "confiscated religious property," if he submitted to a medical assessment. (*Id.* at 5 ¶ 3.) Plaintiff alleges that he complied with the request, but that Defendant Fernandez "never fulfilled his promise." (*Id.* at 5 ¶¶ 3-4.)

According to the Fourth Amended Prisoner Complaint, shortly thereafter, Plaintiff put his arm through his cell's food slot, and demanded that Defendants Balsick, Craig, and Starika return his religious property from Defendant Fernandez. (*Id.* at 5 ¶ 4.) Defendants Balsick, Craig, and Starika reportedly responded that they would "try" to get the requested items, on the condition that Plaintiff remove his arm from the food slot. (*Id.* at 5 ¶ 5.) Plaintiff, however, refused to comply with the order, purportedly because Defendants "were lying only to relieve themselves of any short term [sic] problem." (*Id.*)

It is alleged that, over the next few minutes, Defendants Balsick and Craig "became increasingly angry and vengeful" toward Plaintiff, as they "began to insult and threaten" him with various taunts pertaining to his criminal history. (*Id.* at 6 ¶ 7.) Defendant Balsick reportedly warned Plaintiff, "[I]f you don't pull your arm back we are going to gas your fu\*\*ing ass." (*Id.* at 6 ¶ 8.) Plaintiff, once again, refused to comply with the order, and instead, placed his left leg into the food slot to "prevent any direct gassing" to his face. (*Id.* at 6 ¶ 9.) It is alleged that Defendant Balsick then "nod[ded]" to Defendant Craig and "grab[bed]" Plaintiff's leg, as Defendant Craig "gasse[d] [Plaintiff's] cell through the slot for 8 seconds." (*Id.* at 6-7 ¶¶ 9-11.) Plaintiff alleges that Defendant Craig then "slam[med]" his leg "against protruding metal locking mechanisms on the doors outer surface which evokes a cry of pain." (*Id.* at 7 ¶ 11.)

Plaintiff, at that point, reportedly agreed to remove his leg from the slot, but Defendants Balsick and Craig, nevertheless, "continued to hurt" him. (*Id.* at 7 ¶ 12.) Plaintiff alleges, specifically, that Defendant Craig "forcefully straightened" his leg until it was "fully extended." (*Id.* at 7 ¶ 13.) Plaintiff further alleges that Defendant Balsick "seized this opportunity to punch [his] left groin area with full force 20 times, striking [his] testicles and inner left thigh." (*Id.* at 7 ¶ 14.) In addition, Plaintiff alleges that Defendant Starika, at Defendant Craig's command, "hit" him with a baton "once or twice" on his left shin. (*Id.* at 8 ¶ 15.)

## II.     *Blanket Incident – Defendants Fernandez, Melvin, and Williams*

For the next twelve to fourteen hours, Plaintiff was reportedly shackled in full body restraints and monitored by Defendant Melvin. (*Id.* at 8-9 ¶¶ 19-20.) Plaintiff states that, throughout that time, he "repeatedly" told Defendant Melvin that he "refuse[d] to come out of

restraints," unless he could speak to the Special Investigation Service "about being assaulted." (*Id.* at 9 ¶¶ 20-21.)

Shortly thereafter, on December 10, 2016, at 7:30 AM, Defendants Fernandez and Williams, along with two subordinate ADX guards, entered Plaintiff's cell to perform a restraint check. (*Id.* at 9 ¶ 22.) According to Plaintiff, Defendant Fernandez "ordered" him "very disrespectfully" to hand over his blanket, and for that reason, he "took [his] time" to comply. (*Id.*) Plaintiff alleges that Defendant Fernandez then "stormed" into his cell, "threw" his blanket, and ordered the two subordinate guards to remove his restraints. (*Id.* at 9 ¶¶ 22-23.) After Plaintiff refused to "com[e] out of restraints," the two subordinate guards reportedly "slammed" him against the wall and the bed. (*Id.* at 9-10 ¶ 24.) Plaintiff claims that Defendant Fernandez then "pulled out his gas canister," and "emptied it into [his] face for five seconds until there was no more gas left." (*Id.* at 10 ¶ 26.) Defendant Williams, a prison nurse, was said to be "at the cell door observing the whole interaction." (*Id.* at 10 ¶ 27.)

Plaintiff complains that, immediately following this incident, he was "completely blind and tearing uncontrollably" for three and a half hours. (*Id.* at 10 ¶ 28.) Although Plaintiff was eventually "escorted to the shower," he alleges that Defendants prevented him from effectively "decontaminating" his face. (*Id.* at 11 ¶ 30.) Plaintiff further alleges that, upon returning to his cell, Defendant Fernandez began to "four-point" him.[1] (*Id.* at 11-12 ¶¶ 33-34.) Shortly thereafter, Plaintiff reportedly "began to writhe frantically in pain due to the gas burning effects all over [his] body and [his] inability to breathe." (*Id.* at 12 ¶ 35.) Plaintiff alleges that he "kept

---

[1] According to Plaintiff, to be "four-pointed" means "to have each limb chained to a corner of the bed allowing almost no movement as one lay[s] spread out." (Compl. 12 ¶ 34.)

begging" Defendants Fernandez, Melvin, and Williams to "decontaminate" him, because he could not see or breathe. (*Id.*) According to the Fourth Amended Prisoner Complaint, Defendant Williams eventually conducted a "post use of force medical assessment," and "[e]ither he or someone else wiped [Plaintiff's] eyes one time with [Plaintiff's] own shirt." (*Id.* at 12-13 ¶¶ 36-37.) Two hours later, Defendants Melvin and Williams returned to Plaintiff's cell to perform a restraint check, at which time Plaintiff once again "pleaded for decontamination," but to no avail. (*Id.* at 13 ¶ 40.)

### III. *Razor Incident and Alleged Waterboarding – Defendants Johnston and Munoz*

On July 5, 2017, Plaintiff refused to give his razor to Defendant Munoz, reportedly because Defendant Munoz had previously "verbally harassed" him, "insulted" his religion, and "usurped" his law library access. (*Id.* at 14 ¶ 43.) Defendant Munoz thereafter entered Plaintiff's cell to retrieve the razor, by himself, which was allegedly "in violation of normal ADX policy and practice requireing [sic] at least two officers to enter a cell whenever one is required to do so." (*Id.* at 14 ¶ 44.) Plaintiff alleges that he "tried to explain the issue," but that Defendant Munoz, nevertheless, "took out his gas and held it for 8 seconds or so in his hand before emptying it in [Plaintiff's] unsuspecting face." (*Id.* at 15 ¶ 46.) Defendant Johnston, who was standing nearby, reportedly "didn't seem surprised," as he "calmly" pressed an alarm button for backup. (*Id.*)

Plaintiff alleges that he was then "put in full ambulatory restraints," and "dragged painfully by the restraints to a large kitchen sink," where his "head was forced under a running faucet upside down." (*Id.* at 15 ¶ 48.) He claims that the ADX guards "continued to hold [his]

head under the water" for approximately forty-five seconds.  (*Id.* at 16 ¶ 49.)  Plaintiff is adamant that he "knew that this is what waterboarding was."  (*Id.*)

### IV.    *Procedural History*

Based on these allegations, on June 27, 2018, Plaintiff commenced this lawsuit against the United States and the individual ADX corrections officers, asserting a bevy of claims.  (Doc. No. 1.)  In his Fourth Amended Prisoner Complaint, Plaintiff lodges the following causes of action: (1) FTCA claims for battery and negligence by the United States; (2) Eighth Amendment claims for excessive force by Defendants Balsick, Craig, Fernandez, Munoz, and Starika, in their individual capacities; (3) Eighth Amendment claims for deliberate indifference by Defendants Fernandez, Melvin, and Williams, in their individual capacities; and (4) an Eighth Amendment claim for failure to intervene by Defendant Johnston, in his individual capacity.  (Compl. 18-30 ¶¶ 55-97.)  As relief, Plaintiff seeks monetary damages only.  (*Id.* at 33.)

Defendants now move to dismiss all claims against them, under Federal Rules of Civil 12(b)(1) and 12(b)(6).  (Defs.' Mot. 1.)  Specifically, the individual Defendants seek dismissal of the Eighth Amendment claims asserted against them, contending that there is no *Bivens* remedy for Plaintiff's alleged injuries, or in the alternative, that they are entitled to qualified immunity from those claims.  (*Id.* at 6-14, 19-28, 37-39.)  The United States, for its part, moves to dismiss the FTCA claims lodged against it, based on a purported lack of subject matter jurisdiction, and for failure to plausibly allege an intent to cause harm.  (*Id.* at 14-17, 28-31, 39-40.)  In addition, the United States argues that certain of the FTCA claims for negligence are barred by the discretionary function exception to the FTCA's limited waiver of sovereign immunity, and by Plaintiff's failure to file a Colorado certificate of expert review.  (*Id.* at 29-34.)

**STANDARDS OF REVIEW**

*A.* **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

*B.* *Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the

court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If a party challenges the facts upon which subject matter jurisdiction depends, a court may not presume the truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### C. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice. *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Publicly filed court records, including court transcripts, are subject to judicial notice. *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003).

## ANALYSIS

### A. Eighth Amendment Claims

#### 1. Availability of a **Bivens** Remedy

Plaintiff lodges various Eighth Amendment claims against the individual Defendants, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In their Motion, the individual Defendants argue that each of those claims should be dismissed, because there is no recognized remedy under *Bivens* that would support the claims, and because Plaintiff has alternative avenues of relief available to him. (Defs.' Mot. 6-8, 19-20, 37.)

In *Bivens*, the United States Supreme Court recognized an implied cause of action for damages against federal officers who were alleged to have violated an inmate's Fourth Amendment rights. 403 U.S. at 397. Since *Bivens* the Court has found such a remedy to be

available in two additional contexts: (1) a Fifth Amendment Due Process claim against a United

States Congressman by an administrative assistant who claimed she was fired based on her

gender; and (2) an Eighth Amendment deliberate indifference claim against federal prison guards

by a prisoner's estate for failing to treat the prisoner's asthma. *See Carlson v. Green*, 446 U.S.

14 (1980) (Eighth Amendment); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment).

"These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the

Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v.

Abbasi*, --- U.S. ----, 137 S. Ct. 1843, 1855 (2017). The Court has subsequently "urged caution

before extending *Bivens* remedies into any new context." *Id.* at 1857 (quoting *Corr. Services

Corp. v. Malesko*, 534 U.S. 61, 74 (2001)); *see Peoples v. CCA Det. Centers*, 422 F.3d 1090,

1096 (10th Cir. 2005) ("[T]he purpose of *Bivens* is only 'to provide an otherwise nonexistent

cause of action against individual officers alleged to have acted unconstitutionally, or to provide

a cause of action for a plaintiff who lacked any alternative remedy' for harms caused by an

individual officer's unconstitutional conduct.").

"Whether a *Bivens* action exists for a given constitutional violation must be decided on a

case-by-case basis." *Burton-Bey v. United States*, 100 F.3d 967, 1996 WL 654457, at *1 (10th

Cir. Nov. 12, 1996) (unpublished) (citing *Beattie v. Boeing Co.*, 43 F.3d 559, 564 (10th Cir.

1994)). In evaluating whether a *Bivens* claim can proceed, the first step is to determine whether

the case "presents a new *Bivens* context." *Ziglar*, 137 S. Ct. at 1859-60. The "proper test" for

that inquiry is whether "the case is different in a meaningful way from previous *Bivens* cases

decided by the Court." *Id.* at 1859. If so, "then the context is new." *Id.* "A case might differ in

a meaningful way because of the rank of the officers involved; the constitutional right at issue;

the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disrupted intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

In this case, there is no question that the Eighth Amendment issues raised by Plaintiff differ in meaningful ways from the previous *Bivens* contexts. Of the trio of *Bivens* cases, the only one that even addressed the Eighth Amendment was *Carlson*, where a mother commenced a lawsuit on behalf of her deceased son's estate, alleging that prison officials were deliberately indifferent to her son's serious medical needs, resulting in his death. *Carlson*, 446 U.S. at 16. In this case, by contrast, Plaintiff asserts excessive force claims, deliberate indifference claims based on purported failures to adequately remove pepper spray from Plaintiff's face, and a failure to intervene claim arising out of one of the excessive force claims. *See Millbrook v. Spitz*, No. 18-cv-02667-RM-KMT, 2019 WL 5790701, at *11 (D. Colo. August 26, 2019) (Eighth Amendment excessive force claims related to alleged assaults presented new *Bivens* context); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169-70 (E.D. Cal. 2018) (finding Eighth Amendment claims "arising out of assault by officers and failure to intervene in such an assault" to "arise in a different context from those of *Carlson*"); *see also Silva v. Ward*, No. 16-cv-185-wmc, 2019 WL 4721052, at *4 (W.D. Wisc. Sept. 26, 2019) ("[M]ultiple district courts have held that Eighth Amendment claims outside the field of medical care present new *Bivens* contexts.").

To the extent Plaintiff's deliberate indifference claims against Defendants Fernandez, Melvin, and Williams could be construed to allege failures to render medical aid, the claims are readily distinguishable from those in *Carlson*. Specifically, in *Carlson*, the inmate required medical treatment for an underlying "chronic asthmatic condition." *Carlson*, 446 U.S. at 16 n.1. Notably, other courts have found Eighth Amendment claims for inadequate medical care akin to *Carlson*, where the allegedly subpar treatment related to an inmate's chronic medical condition. *See Blackstone v. Ortiz*, No. 16-8600 (RBK) (JS), 2018 WL 2148846, at *2, *5 (D. N.J. May 9, 2018) (Eighth Amendment claims for failure to treat an inmate's umbilical hernia did not present new *Bivens* contexts); *Stile v. United States*, No. 17-2693 (RMB), 2017 WL 4779617, at *5 (D. N.J. Oct. 23, 2017) (Eighth Amendment claims for failure to treat an inmate's chronic bacterial infections did not present a new *Bivens* context). Here, by contrast, Plaintiff sought treatment solely for injuries that he sustained when prison guards responded to a perceived safety threat by using deterrent spray. Plaintiff has not cited, nor has the court found, any controlling authority holding that prison guards can be liable under *Carlson* for deliberate indifference to the medical needs of an inmate stemming entirely from official action taken in response to a prison disturbance.[2] *See Ziglar*, 137 S. Ct. at 1864 (cautioning that, even if a case has "significant

---

[2] Even if Plaintiff's deliberate indifference claims did not present a new *Bivens* context, they fail to meet the Rule 8(a) pleading standard. To state a claim for deliberate indifference to serious medical needs under the Eighth Amendment, an inmate must show: (1) that he suffered an "objectively, sufficiently serious" medical need; and (2) that the prison official had knowledge of, and disregard for, an excessive risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Here, Plaintiff has failed to show that any of the Defendants acted with a sufficiently culpable state of mind. Indeed, Plaintiff alleges only that Defendants Fernandez and Williams were aware of his request for facial decontamination but took no action, and that Defendant Melvin subsequently remarked that "these are the consequences for your actions." (Compl. 13 ¶ 40, 23 ¶ 71, 25-26 ¶ 79, 28 ¶ 89.) These allegations, without more, do not implicate the Eighth Amendment. *See Gargan v. Gabriel*, 50 F. App'x 920, 924 (10th Cir. 2002) (finding that an inmate failed to show

parallels" to a previous *Bivens* case, and would only be a "modest extension" of the *Bivens* remedy, "a modest extension is still an extension"); *see also Atwood v. Burke*, No. 17cv1315-MMA (BLM), 2019 WL 1427744, at *4 (S.D. Cal. Mar. 29, 2019) (finding an Eighth Amendment claim for deliberate indifference to medical needs presented a new *Bivens* context, even though the claim was "similar to *Carlson*," because the plaintiff was on supervised release at the time of the alleged injury, rather than incarcerated); *Custard v. Balsick*, No. 15-cv-2221-REB-CBS, 2017 WL 131799, at *12 (D. Colo. Jan. 13, 2017) ("Because Plaintiff alleges a prison security measure taken in response to a disturbance or an attempt to maintain order, this is not a claim governed by the deliberate indifference standard.").

Because this case presents a new *Bivens* context, the court must determine whether "special factors" counsel hesitation in expanding *Bivens*, including the existence of an alternative remedial structure. *Ziglar*, 137 S. Ct. at 1857-58. Defendants, in their Motion, present two factors that they claim counsel hesitation here: (1) the availability of the FTCA as a means for Plaintiff to seek redress for his injuries; and (2) Congress's legislation in the area of prisoners' rights with respect to the Prison Litigation Reform Act ["PLRA"]. (Defs.' Mot. 6-7.)

Here, it is quite clear that Plaintiff either currently has, or has had, various alternative remedies available to him. First, in the Fourth Amended Prisoner Complaint, Plaintiff lodges ten FTCA claims against the United States, based upon identical factual predicates to his Eighth Amendment claims. (Compl. 18-19 ¶¶ 55-57, 21-22 ¶¶ 64-67, 23-25 ¶¶ 72-77, 26-28 ¶¶ 80-87, 28-29 ¶¶ 90-91, 30 ¶¶ 94-97.) The Tenth Circuit has made clear that "the FTCA and a *Bivens*

---

that prison officials acted with deliberate indifference when they refused to provide him with medical care subsequent to pepper spray exposure, because the complaint was devoid of facts "indicating whether the medical refusals were wanton, negligent, or reasonable").

claim are alternative remedies." *Robbins v. Wilkie*, 300 F.3d 1208, 1213 (10th Cir. 2002); *see also Schwarz v. Meinberg*, 761 F. App'x 732, 734-35 (9th Cir. 2019) (identifying FTCA claims as an alternative remedy to *Bivens* action). In addition, Plaintiff could have either sought injunctive relief, or invoked the Federal Bureau of Prisons administrative grievance process. *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *Millbrook v. Spitz*, No. 18-cv-01962-RM-KMT, 2019 WL 5790701, at *11 (D. Colo. Aug. 26, 2019). The fact that some alternative remedies do not award monetary damages, or have different procedures, or ultimately do not prove successful, is irrelevant. *Ziglar*, 137 S. Ct. at 1865; *Vega v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018).

In addition, certain other factors counsel hesitation as to the expansion of *Bivens* in this case. Specifically, the enactment of the PLRA suggests that Congress does not want to provide federal inmates with a damages remedy. *Ziglar*, 137 S. Ct. at 1865. As the *Ziglar* Court noted:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse cases must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the [PLRA]'s exhaustion requirements would apply to *Bivens* suits. But the [PLRA] itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* (internal citations omitted). Although Congress's failure to create a damages remedy is not dispositive, the fact remains that Congress has been active in the area of prisoners' rights, and yet, has not promulgated a damages remedy. This factor, therefore, cuts against extending the *Bivens* remedy to Plaintiff's case. *See Culver v. Fed. Bureau of Prisons (BOP)*, No. 5:18cv160-TKW-HTC, 2019 WL 5298551, at *4 (N.D. Fla. Sept. 24, 2019) ("Congress's refusal to enact a

damages remedy for federal prisoners counsels against the Court implying one here."); *Hoffman v. Preston*, No. 1:16-cv-01617-LJO-SAB (PC), 2019 WL 5188927, at *6 (E.D. Cal. Oct. 15, 2019) ("[T]he language and reforms imposed by the PLRA indicate that Congress would not approve an implied damages remedy for the claim presented here.").

Importantly, the individual Defendants in this case were responding to perceived safety threats from an inmate when they committed the alleged Eighth Amendment violations. Eighth Amendment claims that implicate policies and practices related to inmate violence should be evaluated with caution, because they implicate the ability of prison officials to secure their prisons. *See Wolff v. McDonnell*, 418 U.S. 539, 566-67 (1974) (stating that correctional institutions "must have the necessary discretion without being subject to unduly crippling constitutional impediments"). Indeed, Congress is better suited than the Judiciary to "balance the challenges prison administrators and officers face in maintaining prison security against the expansion of the private right of action for damages." *Morgan v. Shivers*, No. 1:14-cv-7921-GHW, 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018); *see Bell v. Wolfish*, 441 U.S. 520, 548 (1979) ("But judicial deference is accorded not merely because the [prison] administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial."); *see also Turner v. Safley*, 482 U.S. 78, 84-85 (1987) ("Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.").

Accordingly, on this record, the *Bivens* remedy should not be extended to Plaintiff's Eighth Amendment claims against the individual Defendants. Therefore, the individual Defendants' motion to dismiss those claims is granted.

## 2. *Qualified Immunity*

The individual Defendants also invoke qualified immunity to each of Plaintiff's Eighth Amendment claims. (Defs.' Mot. 8-14, 20-28, 37-39.) Qualified immunity is an affirmative defense to *Bivens* liability. *Johnson v. Fankell*, 520 U.S. 911, 914 (1997). Whether the individual Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

Once a defendant has asserted a qualified immunity defense, the burden shifts to the plaintiff to establish that: (1) the defendant violated a constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Qualified immunity is applicable, unless the plaintiff can satisfy both prongs of the inquiry. *Id.*

In this case, because *Bivens* does not authorize any of Plaintiff's Eighth Amendment claims, there is no need to address whether the individual Defendants would be entitled to qualified immunity as to those claims. *See Sossaman v. Lone Star State of Tex.*, 560 F.3d 316, 327 (5th Cir. 2009) ("If no private right of action exists against the defendants in their individual capacities, then a qualified immunity . . . analysis would be unnecessary.").

### B. FTCA Claims

Plaintiff asserts various FTCA claims for battery and negligence against the United States, arising from alleged misconduct by the individual Defendants. Specifically, Plaintiff lodges six battery claims under the FTCA: (1) three claims arising from "physical assault[s]" by Defendants Craig, Balsick,[3] and Starika; (2) two claims arising from the use of pepper spray by Defendants Fernandez and Munoz; and (3) one claim arising from the "waterboarding" allegation. (Compl. 18-19 ¶¶ 55-57, 21 ¶ 64, 28-29 ¶¶ 90-91, 30 ¶¶ 96-97.) Plaintiff, likewise, makes the following FTCA claims sounding in negligence: (1) negligent performance of duty by Defendants Fernandez and Williams, arising from their "failure to follow decontamination policy;" (2) medical negligence by Defendant Williams, arising from his failure to treat Plaintiff's injuries; (3) negligent performance of duty by unspecified ADX prison guards, arising from their failure to conduct fifteen-minute "welfare checks" on Plaintiff "while he was four-pointed;" and (4) negligent performance of duty by Defendant Melvin, arising from his failure to conduct a two-hour "restraint check mandated by policy." (*Id.* at 21-22 ¶¶ 65-67, 23-25 ¶¶ 72-77, 26-27 ¶¶ 80-87.)

The United States seeks dismissal of these claims, under Rule 12(b)(1), arguing that they are all improperly based on purported violations of ADX policies. (Defs.' Mot. 15-17, 28-30, 39-40.) The United States is adamant that violations of federal prison regulations cannot give rise to liability under the FTCA, because "no comparable state liability [exists] for private persons." (*Id.* at 16.) In addition, the United States argues that Plaintiff has failed to plausibly

---

[3] Plaintiff describes his claim, with respect to Defendant Balsick, as one for battery, "or in the alternative, sexual battery." (Compl. 19.)

allege claims for battery or negligence under Colorado law. (*Id.* at 17, 28-30, 40.) The United States moves to dismiss Plaintiff's negligence claims arising from alleged failures to perform "welfare checks" and "restraint checks," contending that they are barred by the discretionary function exception to the FTCA. (*Id.* at 30-35.) Finally, the United States argues that the FTCA claim for medical negligence by Defendant Williams should be dismissed, because Plaintiff failed to file a certificate of review, pursuant to Colorado Revised Statute § 13-20-602. (*Id.* at 29-30.)

### 1. *Sovereign Immunity*

The United States argues, first, that Plaintiff's FTCA claims should be dismissed, because the court lacks subject matter jurisdiction over them. According to the United States, the "crux" of each FTCA claim in this case is an alleged violation of BOP policy. (*Id.* at 28.) It contends that such violations cannot serve as the basis for liability under the FTCA, because there is "no comparable state liability for private persons." (*Id.* at 16.)

"Sovereign immunity precludes federal court jurisdiction." *Garling v. U.S. Envtl. Prot. Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). The United States, therefore, "can be sued only to the extent that it has waived its [sovereign] immunity." *Id.* (quoting *United States v. Orleans*, 425 U.S. 807, 814 (1976)). The FTCA abrogates the United States' sovereign immunity, and allows the federal government to be held liable, to the same extent as a private individual, for certain torts committed by federal employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004).

Section 1346(b) of the FTCA makes clear that liability will only be found "under circumstances where the United States, if a private person, would be liable to the [plaintiff] in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). "The phrase 'law of the place' refers to the law of the State where the act or omission occurred." *Mecca v. United States*, 389 F. App'x 775, 779 (10th Cir. 2010) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994)). In other words, the United States can be held liable only if "a private person would be held liable to the plaintiff under the tort law of the state where the act or omission occurred." *Pappas v. United States*, 617 F. App'x 879, 881 (10th Cir. 2015) (citing *Meyer*, 510 U.S. at 477). "A claim that fails to allege facts sufficient to meet this requirement must be dismissed for lack of subject matter jurisdiction." *Id.* (citing *Dorking Genetics v. United States*, 76 F.3d 1261, 1264 (2d Cir. 1996).

"It is axiomatic that '[t]he violation of a federal regulation in and of itself is not a basis for liability under the FTCA." *Id.* at 882 (quoting *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 973 n.2 (10th Cir. 1994)). Indeed, "[e]ven if specific behavior is statutorily required of a federal employee, the government is not liable under the FTCA unless state law recognizes comparable liability for private persons." *Id.* at 882-83 (quoting *Ayala v. United States*, 49 F.3d 607, 610 (10th Cir. 1995)).

### i. Battery Claims

There is no question that Colorado substantive law governs Plaintiff's FTCA claims. (Compl. 18 ¶ 55; Defs.' Mot. 14.) In Colorado, to establish a tort claim for battery, a plaintiff must show: (1) that the defendant intended to make physical contact with the plaintiff, or to put the plaintiff in apprehension of immediate physical contact; (2) immediate physical contact of

the plaintiff resulted; and (3) the contact was harmful or offensive. *White v. Munoz*, 999 P.2d 814, 816 (Colo. 2000); *Adams v. Corr. Corp. of Am.*, 187 P.3d 1190, 1198 (Colo. App. 2008). Intent is generally shown through circumstantial evidence. *White*, 999 P.2d at 817.

Here, Plaintiff alleges that federal prison guards punched him and kicked him, sprayed chemicals directly into his face, and later "waterboarded" him, and that he suffered physical and psychological injuries, as a result. (Compl. 18 ¶ 55, 19 ¶¶ 56-57, 21 ¶ 64, 28 ¶ 90, 30 ¶ 96.) As to the intent element of his claims, Plaintiff alleges that Defendants Craig, Balsick, and Starika made "verbal threats and insults" prior to attacking him, and that they later refused to let him comply with their orders. (*Id.* at 19 ¶¶ 56-57.) Plaintiff likewise alleges that Defendant Fernandez previously made "verbal retaliatory statements indicating his pleasure in [Plaintiff's] pain," and that Defendant Munoz had an ongoing prior "dispute" with him regarding law library access. (*Id.* at 21 ¶ 64, 28 ¶ 90.) As to the allegation that he was held under running water for an excessive time, Plaintiff states, among other things, that even though he "began to struggle" while being held under the faucet, the prison guards "continued anyway." (*Id.* at 15-16 ¶¶ 48-49, 30 ¶ 97.) At this stage in the proceedings, these allegations are enough to state claims for battery under Colorado law.[4] *See Fifer v. United States*, 649 F. App'x 426, 427 (9th Cir. 2016) (finding allegations that prison guards intentionally fired bullets at a federal inmate, from which he sustained injuries, to be sufficient to make out a *prima facie* case for battery under Arizona law).

Importantly, although Plaintiff does reference certain federal prison regulations in support of his FTCA claims, the regulations do not form the sole basis for purported liability.

---

[4] However, to the extent Plaintiff seeks to assert a separate claim for sexual battery under the FTCA, arising from the conduct of Defendant Balsick, he has failed to do so. Indeed, Plaintiff makes no allegation, at all, as to how Defendant Balsick's actions amounted to sexual battery.

Indeed, Plaintiff relies on the ADX violations, in addition to alleged threats and insults made by the individual Defendants, as circumstantial evidence of intent to harm. *See Sanders v. United States*, No. CIV-14-1302-D, 2015 WL 3936973, at *2 (W.D. Okla. June 26, 2015) (rejecting the argument that an inmate's FTCA negligence claim was "solely grounded in a federal regulation," because the inmate also relied on "allegations of medical malpractice" to support his claim); *see also McCollum v. United States*, No. 12-cv-01175-PAB-MJW, 2014 WL 788062, at *2 (D. Colo. Feb. 26, 2014) (finding that an inmate produced enough circumstantial evidence to establish intent to harm, with respect to his FTCA assault claim against a prison guard, because a "reasonable juror could find that [the prison guard] intended harmful and offensive contact with [the inmate] based on [the inmate]'s description of events").

On this record, then, Plaintiff has plausibly alleged private liability with respect to his FTCA claims for battery. Accordingly, the United States' motion to dismiss those claims, for lack of subject matter jurisdiction, is denied.[5]

_____

[5] In its Reply, the United States argues that "no harmful or offensive contact can be inferred," with respect to Plaintiff's battery claims, "because Colorado law imposes on the officers an affirmative duty to respond with force." (Reply 12.) In support of that proposition, the United States cites Colorado Revised Statute § 17-20-122, a criminal statute that grants immunity to state correctional officers for conduct arising from the justified use of force. C.R.S. § 17-20-122. Aside from the fact that the United States raises this argument for the first time in its Reply, Plaintiff has plausibly alleged that the decision to use force in this case was not justified. *See McCollum v. United States*, No. 12-cv-01175-PAB-MJW, 2014 WL 788062, at *3 (D. Colo. Feb. 26, 2014) ("Assuming, without deciding, that [C.R.S. § 17-20-122] appl[ies] to federal corrections officers, even if the decision to restrain plaintiff was based entirely upon his admitted failure to completely obey a correctional officer's command to 'shut-up,' a reasonable juror could find that forcing a handcuffed prisoner to the floor and kneeing him in the back is greater force than that particular emergency demanded.").

### ii. Negligence Claims

In Colorado, the elements of a claim for negligence are: (1) the existence of a legal duty of care owed by the defendant to the plaintiff; (2) the defendant's breach of that duty; (3) a causal connection between that breach and injuries suffered by the plaintiff; and (4) resultant damages. *N.M. ex rel. Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017) (citing *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004)). The Colorado Supreme Court has made clear that duty is the "threshold element." *Id.* "Only if there is a legal duty to avoid unreasonably risky conduct does the issue of breach and then the other negligence elements arise." *Vigil*, 103 P.3d at 325.

Here, aside from his claim for medical negligence by Defendant Williams, Plaintiff has failed to identify any cognizable duty of care that was owed to him under Colorado law.[6] Rather, Plaintiff alleges only a statutory duty of care, owed by federal prison guards to inmates, pursuant to 18 U.S.C. § 4042.[7] (Compl. 21 ¶ 65, 23 ¶ 72, 26 ¶ 81, 27 ¶ 84.) Without the existence of a

---

[6] As to the FTCA claim for medical negligence by Defendant Williams, Plaintiff alleges "the duty of care owed by a health professional to his patients." (Compl. 24 ¶ 75.) In Colorado, "a general claim for negligence in medical treatment arises when a physician's care falls below the degree of knowledge, skill, and care used by other physicians practicing the same specialty." *Gorab v. Zook*, 943 P.2d 423, 427 (Colo. 1997). The Colorado Supreme Court has made clear that such a duty of care may arise, even in the absence of a formal doctor-patient relationship. *HealthONE v. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002); *see Estate of Grubbs v. Weld Cty. Sheriff's Office*, No. 16-cv-00714-PAB-STV, 2017 WL 951149, at *8-9 (D. Colo. March 8, 2017) (finding allegation that a nurse owed a duty to provide "adequate healthcare" to be sufficient to state a legal duty under Colorado law); *see also Cohen v. Zaki*, No. 09-cv-02966-LTB-CBS, 2010 WL 2507840, at *3 (D. Colo. May 28, 2010) (finding that an inmate had alternative causes of action available to him under Colorado law for alleged medical negligence by a prison nurse).

[7] In the Fourth Amended Prisoner Complaint, Plaintiff references to a "special relationship" between himself and Defendant Fernandez. (Compl. 21.) However, the allegations provide no basis from which to infer a "special relationship" that would support any duty of care under Colorado law. *See Smit v. Anderson*, 72 P.3d 369, 372 (Colo. App. 2002) ("[T]he existence of a

corresponding state law duty, Plaintiff's FTCA claims for negligent performance of duty must be dismissed for lack of subject matter jurisdiction. *See Reality Tech., Inc. v. United States*, No. 13-cv-02805-REB-NYW, 2015 WL 4594145, at *7-8 (D. Colo. May 29, 2015) (finding a lack of subject matter jurisdiction as to FTCA claims for negligence, because the plaintiff did not identify a duty of care owed under Colorado law); *A Just Cause v. United States*, 45 F. Supp. 3d 1258, 1272 (D. Colo. 2014) (finding plaintiffs failed to allege an FTCA claim for negligence against a federal court reporter, because they did not allege a breach of duty under Colorado law, and instead, alleged only a breach of a federal statutory duty). And, given that the court lacks jurisdiction over those claims, there is no need to address the United States' other arguments for dismissal.

### 2. *Medical Negligence – Certificate of Review*

The United States argues that Plaintiff's medical negligence claim must be dismissed, because Colorado law required Plaintiff to file a certificate of review by an expert. (Defs.' Mot. 29-30.) Pursuant to Colorado law:

> In every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional named as a party. . . within sixty days after service of the complaint, . . . unless the court determines that a longer period is necessary for good cause shown.

C.R.S. § 13-20-602(1)(a). The certificate of review must demonstrate that the plaintiff has consulted a professional "who has expertise in the area of the alleged negligent conduct," and that the professional has reviewed the known facts, records, and other materials deemed relevant

---

duty has been recognized only in a limited number of special relationships between the parties such that social policy justifies the imposition of a duty to act.").

to the allegations, and "based on the review of such facts, has concluded that the filing of the claim . . . does not lack substantial justification[.]" *Id.* at § 13-20-602(3)(a). "If the court determines that a certificate is required, and the plaintiff fails to file, such failure requires dismissal of the complaint." *Sherman v. Klenke*, 653 F. App'x 580, 595 (10th Cir. 2016) (citing C.R.S. § 13-20-602(4)).

"The certificate of review requirement is not jurisdictional; rather, it acts as an affirmative defense that may be waived." *Morales v. Rattan*, No. 17-cv-03009-PAB-KLM, 2019 WL 588192, at *3 (D. Colo. Feb. 13, 2019) (citing *Miller v. Rowtech, LLC*, 3 P.3d 492, 494-95 (Colo. App. 2000)); *see also* C.R.S. § 13-20-602(b)(2) ("[T]he defense may move the court for an order requiring filing of such a certificate."). The certificate of review serves to establish a *prima facie* case of negligence, and to ensure that a defendant does not expend "unnecessary time and costs in defending professional negligence claims," by "weed[ing] out frivolous claims at an early stage of the judicial process. *Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002); *Badis v. Martinez*, 819 P.2d 551, 554 (Colo. App. 1991), *rev'd on other grounds*, 842 P.2d 245 (Colo. 1992).

The Tenth Circuit has made clear that Colorado's certificate of review requirement applies to "professional negligence claims brought against the United States under the FTCA." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004). And, this requirement applies irrespective of whether an inmate is represented by counsel. *Sherman*, 653 F. App'x at 594. However, a certificate of review need only be filed in an FTCA case if: "(1) the plaintiff brings a claim of alleged professional negligence against a licensed professional, *and* (2) expert testimony is necessary to substantiate the claim." *Id.* at 595 (emphasis in original).

In this case, there is no question that Plaintiff intends to bring an FTCA claim for professional negligence by a licensed professional. Plaintiff alleges that Defendant Williams, a nurse, should have provided him with immediate medical care, instead of delaying or denying treatment. (Compl. 24-25 ¶¶ 75-76.) As a nurse, Defendant Williams is a licensed professional within the meaning of the statute. Given that Plaintiff's allegations as to Defendant Williams sound in professional negligence, the first element is satisfied. *See State v. Nieto*, 993 P.2d 493, 504 (Colo. 2000) (holding that an inmate's claim against a prison nurse for medical malpractice "falls squarely within the class of claims covered by" § 13-20-602).

Regarding the second element, Plaintiff argues that a certificate of review is not necessary to substantiate his FTCA claim for medical negligence, because he has alleged that Defendant Williams's conduct violated ADX decontamination policy. (Resp. 20.) "A court has discretion to determine whether a claim requires expert testimony, and therefore whether the certificate of review requirement is applicable." *Burns v. Ted Laurence, P.A.*, No. 10-cv-2691-WJM-CBS, 2013 WL 3771280, at *2 (D. Colo. July 17, 2013) (citing *Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 629 (Colo. 1999)). In general, expert testimony in medical negligence actions is "necessary to determine the standards of professional care and competence which define the concept of reasonableness appropriate to adjudication of such disputes." *Gorab v. Zook*, 943 P.2d 423, 427 (Colo. 1997). This is because "[t]he question of whether a medical professional's conduct meets the professional standard of care is not within the ambit of common knowledge under Colorado law." *Shinn v. Melberg*, No. 12-cv-01180-LTB-BNB, 2014 WL 334662, at *3 (D. Colo. Jan. 30, 2014) (citing *Teiken v. Reynolds*, 904 P.2d 1387, 1389 (Colo. App. 1995)).

However, in certain contexts, Colorado courts have deemed expert testimony to be unnecessary. *See, e.g., Williams v. Boyle*, 72 P.3d 392, 397 (Colo. App. 2012) ("[A] claim relying on the doctrine of *res ipsa loquitur* will not require a certificate of review because the facts create a presumption of negligence and, therefore, expert testimony is not necessary."); *Greenwell v. Gill*, 660 P.2d 1305, 1307 (Colo. App. 1982) ("A plaintiff alleging lack of informed consent on the basis of an asserted non-disclosure of material facts is not necessarily required to present expert testimony to establish his or her claim."). Indeed, in cases alleging negligent medical treatment, the court has discretion to determine "whether the factual context of the proceeding is so technically complex that the plaintiff must present testimony by an expert witness to establish the applicable professional standards and minimal levels of competence." *Greenwell*, 660 P.2d at 1307 (citing *Farrah v. Patton*, 59 P.2d 76 (1936)).

Here, Plaintiff alleges that Defendant Williams "negligent[ly] refus[ed] to provide treatment" for Plaintiff's "injuries caused by gas," or in the alternative, that he "was negligent in not noticing the need for treatment." (Compl. 25 ¶ 76.) The court concludes that expert testimony, and thus a certificate of review, would be needed for a fact-finder to independently evaluate the merits of such a claim. To prove medical negligence, Plaintiff would have to show, through expert testimony, the nature of the duty of care owed by a prison nurse with regard to the treatment of pepper spray injuries, as well as how Defendant Williams breached that duty of care. *See Williams*, 72 P.3d at 397 ("Plaintiff's medical negligence claim alleges that defendant owed a duty of care to plaintiff, which he breached by not giving appropriate diagnosis, treatment, and followup [sic] of plaintiff's health problems. This claim of professional negligence required expert testimony and, consequently, a certificate of review."); *see also*

*Morales v. Rattan*, No. 17-cv-03009-PAB-KLM, 2019 WL 588192, at *5 (D. Colo. Feb. 13, 2019) (allegations that a physician misdiagnosed the plaintiff's foot condition and "failed to prevent the avoidable amputation of [his] toe" required expert testimony); *Custard v. Balsick*, No. 15-cv-2221-REB-CBS, 2017 WL 131799, at *21 (D. Colo. Jan. 13, 2017) (allegations that a physician's assistant "should have immediately provided medical care instead of delaying or denying it" required expert testimony).

Because expert testimony is necessary to substantiate Plaintiff's FTCA claim for medical negligence, his failure to file a certificate of review bars him from proceeding with that claim. C.R.S. § 13-20-602(4); *Sherman*, 653 F. App'x at 595. Accordingly, the United States motion to dismiss that claim is granted.

### C. Plaintiff's Motion for Injunction

On June 5, 2019, Plaintiff filed a "Motion for Injunction," in which he asks for a preliminary injunction to "prohibit [the] United States, its agents, the ADX Warden and or mailroom staff and or SIS staff (int. affairs) from tampering with or destroying any of Plaintiff's incoming or outgoing legal mail." (Pl.'s Mot. 1 [all sic in original].) Plaintiff also seeks the issuance of a preliminary injunction to have Defendants "send all of [their] court filings to Plaintiff by certified mail." (*Id.* at 2.) Finally, Plaintiff requests that this court "take notice of Plaintiff's mailing problems and thereby issue an order that it will not rule on any motion whose effect substantially effects Plaintiff's rights or can be prejudicial to Plaintiff without awaiting his response to that motion, or such order th[e] court deems proper to ensure Plaintiff can pursue this suit unimpeded and without fear of 'failing to prosecute' through no fault of his own." (*Id.*)

A preliminary injunction is an extraordinary remedy; accordingly, the movant's right to relief must be "clear and unequivocal." *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). A movant must show: (1) a likelihood of success on the merits; (2) a threat of irreparable harm, which outweighs any harm to the nonmovant; and (3) that the injunction would not adversely affect the public interest. *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012).

It is well-settled that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) ("*Dominion Video II*"). Therefore, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.* If the movant fails to meet his burden of establishing irreparable injury, the court "need not address the remaining preliminary injunction factors." *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017).

"Because the primary goal of a preliminary injunction is to preserve the pre-trial status quo, courts should be especially cautious when granting an injunction that requires the nonmoving party to take affirmative action—a mandatory preliminary injunction—before a trial on the merits occurs." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004)). If, as here, the issuance of a preliminary injunction would alter the status quo, "the movant bears a heightened burden and 'must make a strong showing both with regard to the likeliness of success on the merits and with regard to the balance of harms.'" *Gen. Motors Corp.*

*v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (quoting *O Centro*, 389 F.3d at 976); *see Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (explaining that preliminary injunctions that seek to alter the status quo are "specifically disfavored," because "the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held").

As a final matter, injunctive relief relating to the management of prisons should be granted only under exceptional and compelling circumstances. *See Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) ("[I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration."); *see also* 18 U.S.C. § 3626(a)(2) ("In any civil action with respect to prison conditions, . . . [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.").

In this case, Plaintiff has failed to demonstrate a substantial likelihood of irreparable harm absent the requested prospective relief, *i.e.,* a "significant risk" that he will suffer an injury "of such imminence that there is a clear and present need for equitable relief" before the court can render a final decision on the merits of this case. *See Schrier*, 427 F.3d at 1267; 321 F.3d at 1258. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)); *see Laratta v. Zavaras*, No. 09-cv-02498-REB-MEH, 2010 WL 3720106, at *2 (D. Colo. April 20, 2010) ("Injunctive relief is only

appropriate to avoid an existing threat of injury and cannot be employed to protect against an injury that is merely feared to be suffered at some indefinite future date.").

Plaintiff complains that various ADX prison officials[8] "tampered" with his legal mail, and that as a result, he never received nearly half of the docket entries filed in this case, and one of his intended court filings "never arrived to the court." (Pl.'s Mot. 1, 3.) In addition, he alleges that ADX mailroom staff "illegally opened, read, copied, and delayed delivery of [Defendants' Motion to Dismiss] causing a 10-day delay in service;" and that they "changed the zip code on Plaintiff's outgoing legal mail to his former military attorney causing the mail to be 'returned to sender' by the US Postal Service." (*Id.* at 3-4.) However, aside from conclusory statements that the alleged conduct "has and will cause irreparable injury," Plaintiff has wholly failed to identify any actual detriment that he suffered from the alleged mishandling of his legal mail. *See Cordova v. Dowling*, No. 11-cv-01130-BNB, 2011 WL 2601000, at *1 (D. Colo. June 30, 2011) ("Mr. Cordova does not demonstrate how having to photocopy his documents through the prison law library interferes with his court access in the instant action in such a way as to cause him irreparable injury.").

It is true that a presumption of irreparable injury may exist, where constitutional rights are infringed. *See Schrier*, 427 F.3d at 1266; *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005). And, as Plaintiff correctly points out, inmates unequivocally

---

[8] To the extent Plaintiff seeks injunctive relief against individuals that are not parties in this case, such relief is unavailable. *See Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1171 (E.D. Cal. 2018) ("[T]he pendency of this action does not give the Court jurisdiction over prison officials in general."); *Gilmore v. Blair*, No. 9:18-CV-0463 (GLS/DJS), 2019 WL 4926303, at *2 (N.D.N.Y. Oct. 7, 2019).

possess a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) ("Interference with a prisoner's right to access to the courts, such as delay, may result in a constitutional deprivation."). However, an alleged denial of access to the courts only rises to the level of a constitutional rights violation, where an inmate suffers actual prejudice or detriment as a result. *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006); *see Moody v. Hardy*, No. 4:07CV035-P-B, 2007 WL 844709, at *2 (N.D. Miss. March 16, 2007) ("A plaintiff must show real detriment, *i.e.,* true denial of access, such as the loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding."). Because Plaintiff has failed to show improper motive or interference with his access to the courts, he has failed to allege a deprivation of his constitutional rights. *See Florence v. Booker*, 23 F. App'x 970, 972 (10th Cir. 2001) (holding that a prison official's inadvertent opening of an inmate's constitutionally protected mail did not give rise to a constitutional violation, because there was no evidence of improper motive or actual denial of access to the courts).

On this record, then, Plaintiff has not demonstrated that he will suffer irreparable harm absent injunctive relief. For that reason, there is no need to address the remaining preliminary injunction factors. *N.M. Dep't of Game & Fish*, 854 F.3d at 1249.

Accordingly, it is

**ORDERED** that Defendants' "Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)" (Doc. No. 143) is **GRANTED, in part, and DENIED, in part**. Specifically, Plaintiff's *Bivens* claims against Defendants Balsick, Craig, Munoz, Starika, Fernandez, Melvin, Williams, and Johnston are dismissed, with prejudice, for failure to state a claim, and they are

dismissed from this lawsuit.  Plaintiff's FTCA claims for negligence performance of duty against the United States are also dismissed for lack of subject matter jurisdiction.  In addition, Plaintiff's FTCA claim for medical negligence is dismissed, without prejudice, for failure to file a certificate of review.  Defendants' Motion is denied in all other respects, and the case proceeds against the Defendant United States alone, solely on Plaintiff's FTCA claims for battery.

It is further **ORDERED** that Plaintiff's "Motion for Injunction" (Doc. No. 166) is **DENIED**.

This 11th day of December, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge